## APPEAL OF JACKSON K. DERING.

Docket No. 2178. Submitted June 29, 1925. Decided April 19, 1926.

1. A taxpayer on March 1, 1913, was the owner of the fee in coal land, subject to a lease which provided for the payment of a royalty of 3.25 cents per ton. During the year 1913 and subsequent years he permitted the lessee and its sublessees to remove coal upon the payment of a royalty rate of 2.10 cents per ton. *Held*, that the royalty rate paid should be used in the computation of the basis for depletion rather than the rate provided in the lease and not paid.

2. Where a tax has been assessed and a claim filed for the abatement thereof, this Board is without jurisdiction, under the Revenue Act of 1924, until the taxpayer appeals from the Commissioner's final determination of the claim in abatement.

*C. B. Cardy, Esq.*, for the taxpayer.
*Arthur J. Seaton, Esq.*, for the Commissioner.

Before KORNER, STERNHAGEN, LANSDON, GREEN, and LOVE.

The taxes in controversy are income taxes for the calendar years 1917, 1918, and 1919, in the amounts of $2,528.65, $1,349.99, and $4,627.59, respectively. The taxpayer, in his computation of net income for 1917, deducted an allowance for depletion at the rate of $0.05 per ton; for 1918, $0.0721 per ton; and for 1919, $0.1295 per ton. For each of the years the Commissioner, in his computation of net income, used as a basis for the depletion deduction the amount of $0.012978.

The Commissioner alleges in his motion and answer that, as to the 1917 tax, no deficiency letter, as provided in section 274(a) of the Revenue Act of 1924, was mailed to the taxpayer; that the Commissioner assessed the tax referred to in a letter in January, 1925, prior to the filing of this appeal, and that since the assessment of said tax the Commissioner has rejected no claim for the abatement thereof. It is further alleged that the statutory period within which the 1918 tax may be assessed has expired. Upon the above allegations the Commissioner moves that the appeal be dismissed as to the years 1917 and 1918.

### FINDINGS OF FACT.

The taxpayer, a resident of Lake Villa, Ill., has his principal office in Chicago. His business is largely the mining of coal, the selling of coal at wholesale, and farming.

On July 11, 1912, the taxpayer purchased, for a cash consideration of $49,600, the fee in the mineral rights of 331 acres of coal lands and 6 acres of surface rights upon which were four miners' houses. These coal lands are located in Vermillion County, Ind., near the town of Clinton, and are in what is known as the Clinton field. At the time of the purchase there was available for mining only what is known as the No. 4 vein of coal. The other veins had been mined out or were not of such a nature that they could be mined at a profit. A part of the No. 4 vein could not be mined because of a fault which ran through it.

The coal from the No. 4 vein is limited in quantity, has a low ash and sulphur content, and is well adapted to metallurgical and open-hearth furnace work. It is practically the only coal from the Illinois and Indiana fields which competes with eastern coal for metallurgical purposes. For several years the Illinois Steel Co. purchased practically the entire output of the mine.

The Chicago & Eastern Illinois Railroad crosses the eastern end of the property. All of the No. 4 coal was mined and removed through mine No. 5, the shaft of which is located immediately ad-

jacent to the tracks of such railroad. The Clinton field has a 10-cent differential in freight rates under competing fields in the Chicago market.

On April 17, 1900, the mineral rights subsequently acquired by the taxpayer by the purchase above mentioned were leased by the then owners, Lars A. Whitcomb, Lydia A. P. Whitcomb, and Nema M. Whitcomb, to the Bruilette Coal Co. for a term of 20 years. The lessees agreed to pay 3¼ cents per ton for all coal above a certain size, with a stipulated minimum monthly payment of $116.66.

This lease, by assignment or otherwise, came into the possession of the Chicago & Eastern Illinois Railroad and it, in turn, prior to March 1, 1913, leased the property described in the Whitcomb lease, together with other property, to the J. K. Dering Coal Co. The taxpayer owns at least 90 per cent of the stock of the J. K. Dering Coal Co., is its president, and directs and supervises all its operations.

In 1914 the Chicago & Eastern Illinois Railroad went into the hands of receivers, one of whom, William J. Jackson, was a personal friend of the taxpayer. The order appointing the receivers authorized them to cancel all leases it had with operating companies, and pursuant to this order the lease from the railroad company to the Dering Coal Co. was canceled.

The receivers, as such, operated the No. 5 mine, theretofore operated by the Dering Coal Co., until April 1, 1916, when a new lease was made to the J. K. Dering Coal Co. by a new set of receivers appointed shortly theretofore.

At some time not disclosed by the record, the receivers above named were succeeded by F. S. Peabody, Jabez Wooly, and the taxpayer, as joint receivers.

During all of the years subsequent to the acquisition of the fee in the minerals by Dering, he permitted the various lessees or operators to remove coal upon the payment to him of $0.021 per ton. So far as the record discloses, the Whitcomb lease, with its $0.0325 royalty rate, continued in full force and effect until the expiration of the term therein provided. The Chicago & Eastern Illinois Railroad Co. and its various sets of receivers, among whom was the taxpayer, in their various leases to the J. K. Dering Co., leased the right of the railroad company, which right existed only by virtue of its interest under the Whitcomb lease.

During 1917 there were mined from the property of the taxpayer, 165,939 tons; 1918, 116,041 tons; and in 1919, 94,072 tons. The total tonnage mined between March 1, 1913, and the abandonment of the mine in 1924 was 1,180,884 tons.

## OPINION.

GREEN: Briefly stated, the situation is this: The taxpayer, owning the fee in mineral land subject to a lease, permitted the lessee or the sublessees, of which his own company was one, to remove coal continuously after July 11, 1912 (the date on which he acquired the property), upon the payment of a royalty to him of 2.1 cents. Why this was done is not disclosed and is not material. That it was done is important in that, in our judgment, the royalty rate in effect on March 1, 1913, is determinative of the value of the taxpayer's interest therein and of the rate of depletion to be applied.

The evidence in several places indicates to us that there were transactions that were not disclosed to us; that not all leases were made at arm's length, and that the taxpayer may have been actuated by considerations of which we are not advised. It is apparent from the documentary evidence introduced that the lease from Keller (receiver) to the J. K. Dering Coal Co. did not include all the coal lands previously leased to it by the railroad, from which it removed, subsequent to the Keller lease, a large quantity of coal.

The effect of it all is to permit the lessee and sublessees under the Whitcomb lease to remove coal upon the payment of a lesser royalty than is provided therein. The value of, and the correct depletion rate to be applied to, mineral rights subject to a lease on March 1, 1913, may properly be determined from the royalty rate provided in the lease and the tonnage in place on that date. This is exactly what the Commissioner did in arriving at the depletion rate which we have approved.

As to the 1917 tax, we must grant the Commissioner's motion. The tax for this year has been assessed and no claim in abatement has been denied. Under the Revenue Act of 1924, this Board has no jurisdiction until after the filing of a claim in abatement in accordance with the provisions of the statute and the denial thereof. *Appeal of Oakdale Coal Co.*, 1 B. T. A. 773.

The tax for 1918 has not been assessed. Where the Commissioner admits that the tax for the year in question may not be assessed or collected because the statutory period of limitation has run, no purpose can be served by a consideration of the tax liability for such year.

*The proceeding is dismissed as to 1917 for want of jurisdiction. There is no deficiency for 1918, and the deficiency for 1919 is $4,-627.59. Order will be entered accordingly.*